1998 OK 100

**In the Matter of the Application of Christopher Steven HERBST.**

**Christopher Steven Herbst, Appellant,**

v.

**Brett Sayre and Christi Sayre, Appellees.**

No. 89548.

Supreme Court of Oklahoma.

Oct. 13, 1998.

Ted W. Haxel, Purcell, for Appellant.

Laura J. Corbin, D. Craig Shew, Smith, Shew, Scrivner & Corbin, P.C., Tishomingo, for Appellees.

SIMMS, J:

¶ 1 Maternal grandfather appealed the denial of his application for grandparental visitation based upon the trial court's ruling that a provision in 10 O.S. Supp.1996 § 5, granting visitation rights with a grandchild, was unconstitutional as applied to the facts of this case. The Court of Civil Appeals affirmed the trial court's decision, finding application of 10 O.S. § 5(A)(1) unconstitutional under the existing facts.

¶ 2 Based upon our review of the record and applicable law, we affirm the trial court but vacate the opinion of the Court of Civil Appeals.

¶ 3 Christopher Herbst, the maternal grandfather of the minor child, S.D.S., filed an application pursuant to 10 O.S. Supp.1996 § 5, seeking visitation with his grandchild.[1] Brett and Christi Sayre, the child's parents are married to one another and live together as an intact nuclear family. Both parents oppose any visitation of their child by Herbst. Herbst has made no allegation that S.D.S. is inadequately cared for or in danger of harm in the intact family environment, but seeks visitation asserting it is in the child's best interests to have contact with him, the maternal grandfather.

¶ 4 The parents sought dismissal of Herbst's application based upon the purported grant of authority under 10 O.S. § 5, which could allow court ordered grandparent visitation against the wishes of both parents in an intact nuclear family. Parents assert such an application of the statute is an unconstitutional infringement on their rights to the custody and management of their minor child. We agree.

¶ 5 The provision of 10 O.S. Supp.1996 § 5(A)(1) under which Herbst attempts to force visitation and which the parents argue is unconstitutional reads as follows:

> Pursuant to the provisions of this section, any grandparent of an unmarried minor child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child. The right of visitation to any grandparent of an unmarried minor child shall be granted only so far as that right is authorized and provided by order of the district court.[2]

¶ 6 The first question which must be answered is whether the statute upon which Herbst relies actually confers upon him the standing and right to visitation which he claims. Then, if the statute does what Herbst claims, we must determine if the statute is constitutional. In looking at the constitutionality of our state's grandparent visitation statute, this Court must examine the parental interest which is constitutionally

---

**1.** Herbst filed another petition in an effort to secure visitation with the child of his other daughter. As in this case, the second daughter and her husband do not wish Herbst to have contact with their child. The trial court which heard the other application similarly declined to entertain that application as well. The Sayre petition is the only one which Herbst has pursued on appeal.

Both sets of parents declined to discuss in detail the reasons for their disassociation and dislike of Herbst and chose instead to stand upon their constitutional arguments against implementation of grandparent visitation. Four sealed depositions, possibly reflecting some of the specific objections of these parents were returned to the district court and not made part of this record.

Herbst has never in fact met S.D.S. as his relationship with his daughter, Christi Sayre the mother of S.D.S., deteriorated prior to the child's birth. At the time of his application in June 1996, S.D.S. was not quite three years old.

**2.** The above quoted section, 10 § 5(A)(1), was amended in 1996 and took emergency effect on June 10, 1996, eight days prior to Herbst's application for visitation. The section was again amended, only slightly, in 1997 to read as follows: "Pursuant to the provisions of this section, *each and every* grandparent of an unmarried minor child shall have reasonable ..."

protected, determine under what circumstances and to what extent that interest may be infringed upon by the state and conclude with consideration of whether Oklahoma's statute fits within the bounds of permissible infringement.

## I. What Right Does 10 O.S. Supp.1996 § 5(A)(1) Purport to Give Grandparents

¶ 7 The statute evolved into its present form from an original 1971 enactment which applied only in situations involving a deceased parent.[3] Each subsequent amendment to the statute appears primarily to have been a reaction to decisions of this Court, in which the Legislature has repeatedly expanded the visitation rights of grandparents.[4] *See In re Bomgardner,* 1985 OK 59, 711 P.2d 92, 94–95 (discussion regarding history of 10 O.S. § 5). However, this case presents the first time we have examined an application such as the one urged here, with the child of fit, married, parents, both of whom object to the visitation.

¶ 8 In looking at the statute in its current form, it states that "each and every grandparent of an unmarried minor child shall have reasonable visitation to the child if the district court deems it to be in the best interest of the child." 10 O.S. Supp.1997 § 5(A)(1). The remaining sections of the statute address various family circumstances, but none of the sections address the intact nuclear family, such as this one, with two objecting parents. As a result, the only portion of the statute which has application to the facts of this case is § 5(A)(1).

¶ 9 With regard to grandparent visitation, the statute clearly divests parents of the right to decide what is in their child's best interest and gives that determination to the district court. In this respect, the statute vests Herbst with the standing to pursue visitation rights over the objections of the parents. Therefore, we must next evaluate the constitutionality of the statute.

## II. Parents' Constitutionally Protected Interest

■ ¶ 10 This Court and the United States Supreme Court have repeatedly recognized that the relationship between a parent and child is a fundamental and constitutionally protected right. *Nelson v. Nelson,* 1998 OK 10, 954 P.2d 1219, 1226 ("Unquestionably, the relationship of a parent to a child is a constitutionally protected right."); *Davis v. Davis,* 1985 OK 85, 708 P.2d 1102, 1109 ("The integrity of the family unit and preservation of the parent-child relationship command the highest protection in our society. Intrusion upon the privacy and sanctity of that bond can be justified only upon demonstration of a *compelling state concern.*") (emphasis in original) (*Davis* was overruled by statutory amendment to 10 § 1130, in that *Davis* had held independent counsel for a minor child was required only in state initiated cases regarding termination of parental rights, now privately initiated cases may require the minor to have independent representation as well); *Leake v. Grissom,* 1980 OK 114, 614 P.2d 1107, 1109–10 ("The right of a parent to the companionship, care, custody and management of his/her child is a basic fundamental right protected by the United

---

**3.** The form of the 1971 statute reads as follows:

Provided that, when one or both parents are deceased, any grandparent, who is the parent of the child's deceased parent, shall have reasonable rights of visitation to the child, when it is in the best interest of the child. The district courts are vested with jurisdiction to enforce such visitation rights and make orders relative thereto, upon the filing of a verified application for such visitation rights. Notice as ordered by the court shall be given to the person or parent having custody of said child and the venue of such action shall be in the county of the residence of such person or parent. 10 O.S. Supp.1971 § 5.

**4.** The 1989 amendment to the statute is perhaps the most fundamental for our analysis in this case. The statute no longer limited grandparental visitation to an instance where one or both of the parents were deceased. The changes were as follows: ~~If one or both parents of an unmarried minor child are deceased or if said parents are divorced~~ 1. Pursuant to the provisions of this section, any grandparent ~~who is the parent of the deceased or divorced parent of the child~~ of an unmarried minor child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child. (~~strikeout~~ indicates previous text, underline added text and standard type unchanged text.)

States and Oklahoma Constitutions.... The parents are free to permit visits by the grandparents, but there is no legal authority for compelling them to do so."); *In the Matter of Sherol A.S.*, 1978 OK 103, 581 P.2d 884, 888 ("The fundamental integrity of the family unit, which has found protection in the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Ninth Amendment, is subject to intrusion and dismemberment by the state only where a "compelling" State interest arises and protecting the child from *harm* is the requisite State interest.") (emphasis in original); *In the Matter of Fox*, 1977 OK 126, 567 P.2d 985 ("[T]he adoptive parents are entitled to exercise all the rights of natural parents. Thus, whether the natural grandmother ... can continue visitation with the children is within the discretion of the children's adoptive parents."); *Wisconsin v. Yoder*, 406 U.S. 205, 233–34, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972) ("power of the parent ... may be subject to limitation ... if it appears that parental decisions will jeopardize the health or safety of the child, or have a potential for significant social burdens[,]" otherwise no such limitations may attach.); *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S.Ct. 549, 554, 54 L.Ed.2d 511 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632,639, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974) ("This Court has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."). Such a fundamental and constitutionally protected right cannot be infringed upon absent a compelling state interest. *See, e.g., In the Matter of Sherol A.S.*, 581 P.2d at 888.

¶ 11   This Court acknowledged the right of parents to decide for their children issues regarding visitation with grandparents in *In the Matter of Fox*, 567 P.2d 985, 987 (Okla. 1977). This Court stated:

> [T]he adoptive parents are entitled to exercise all the rights of natural parents. Thus, whether the natural grandmother ... can continue visitation with the chil-

dren is within the discretion of the children's adoptive parents.

The statute was changed in response to the *Fox* decision, but it was the paternal grandparent, within the family, adoption circumstance of the *Fox* case which was accounted for in the revision of the statute and not the above language.   We again acknowledged the parents' authority to oversee grandparent visitation in *Leake v. Grissom*, 614 P.2d 1107, 1109–10 (Okla.1980) (citing *In the Matter of Fox*, 567 P.2d 985 (Okla.1977)).

¶ 12   "Although the parents' right to rear children without state interference is largely expressed as a 'liberty' interest, the [United States] Supreme Court has also noted that right derives from privacy rights inherent in the constitution." *Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769, 772 (Ga.1995), cert. denied 516 U.S. 942, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995) (citing *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) and *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 n. 3 (Tenn.1993)).

## II.   Extent to which the State May Infringe Upon Parents' Liberty Interest

¶ 13   The state's interest in a child is "implicated upon a finding of harm to the child ... or of the custodial parent's unfitness." *Davis v. Davis*, 708 P.2d 1102, 1108 (Okla.1985) (citations omitted).   It is the state's responsibility to exercise its police power to protect a child's welfare when the decisions of parents would result in harm. *Id.; Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769, 772 (Ga.1995) (citing *Yoder*, 406 U.S. at 230, 92 S.Ct. at 1540; *Meyer v. Nebraska*, 262 U.S. 390, 402–03, 43 S.Ct. 625, 628, 67 L.Ed. 1042 (1923)).   Without the requisite harm or unfitness, the state's interest does not rise to a level so compelling as to warrant intrusion upon the fundamental rights of parents. *Matter of Sherol A.S.*, 581 P.2d at 888.

## IV.   The Constitutionality of Oklahoma's Statute

¶ 14   It is important to recognize that mandating the introduction of a third party, even a grandparent, into a family unit

is state action limiting the parents' liberty. Because it is "long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment[,]" as well as Oklahoma's own constitution, the state's interest must be sufficiently compelling to warrant such a limitation and infringement. *Cleveland Bd. of Educ. v. LaFleur,* 94 S.Ct. at 796; *In the Matter of Sherol A.S.,* 581 P.2d at 888.

¶ 15 This Court recognizes that in many families the preservation of intergenerational, grandparental relationships has value as a social ideal and should be encouraged by courts as well as other institutions whenever possible. In fact, it seems statutes such as 10 O.S. § 5 have been developed as a means to provide children with the stabilizing influence of a grandparent when death has affected the family or the parents' "domestic situation [becomes] the subject of judicial concern." *Hawk v. Hawk,* 855 S.W.2d 573, 579 (Tenn.1993); *See also, In re Bomgardner,* 711 P.2d at 94–95.

¶ 16 However, a vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child. With respect to our constitutional evaluation, whether a court ordered grandparent relationship might be thought of as better or more desirable for a child is not relevant. *See Brooks v. Parkerson,* 454 S.E.2d at 773. If operating over the objection of fit parents, grandparental visitation may be imposed only upon a showing that the child would suffer harm without it. *Id.*

¶ 17 The facts of this case involve no harm or threat of harm to S.D.S. and no unfitness on the part of the parents. As a result, there is no interest so compelling which could give the State of Oklahoma license to interfere with the decision of these parents whose care for their child has never been questioned or suspect. Herbst argues for an application of 10 O.S. § 5(A)(1) which effectively strips parents of the right to make the decisions regarding grandparental visitation and their own children. Any conflict between the fundamental, constitutional right of parents to care for their children as they see fit and the statutorily created right of grandparental visitation must be reconciled in favor of the preservation of the parents' constitutional rights. The relationship between parent and child must be held paramount.

¶ 18 Herbst argues this case is ultimately about his grandchild's "best interests". This argument loses sight of the threshold which must be met in order to address the child's best interests in the first place. To reach the issue of a child's best interests, there must be a requisite showing of harm, or threat of harm, to bring the issue before the court or some instance of death or divorce which brings the child's domestic situation within the province of the court. Absent a showing of harm, (or threat thereof) it is not for the state to choose which associations a family must maintain and which the family is permitted to abandon. This case does not meet the threshold test to put the child's best interests at issue. *In the Matter of Sherol A.S.,* 581 P.2d at 888; *Brooks v. Parkerson,* 454 S.E.2d at 773 n. 5. In response, we also note the reasoned observation of the Georgia Supreme Court. It may well be "that even if such a bond exists and would benefit the child if maintained, the impact of a lawsuit to enforce maintenance of the bond over the parents' objection can only have a deleterious effect on the child." *Brooks v. Parkerson,* 265 Ga. 189, 454 S.E.2d 769, 773 (Ga.1995) (citing Joan C. Bohl, *Brave New Statutes: Grandparent Visitation As Unconstitutional Invasions of Family Life and Invalid Exercises of State Power,* 3 Gorge Mason Univ. Civil Rights L. Journal 271, 294–98 (1992)).

¶ 19 From a constitutional perspective, 10 O.S. § 5(A)(1) as it applies to this case falls short of a compelling state interest. The trial court's dismissal of Herbst application was not in error.

### V. Equitable Right of Grandparents

¶ 20 In addition, Herbst argues in favor of an equitable interest in grandparent visitation, apart from the authority granted by statute. *In re Bomgardner,* 711 P.2d 92, 97 (Okla.1985). Even assuming grandparents have a right to visitation outside the

confines of Title 10, equity must in all instances follow the law. *Fleming v. Baptist General Convention of Oklahoma*, 1987 OK 54, 742 P.2d 1087, 1098 ("no court is ever justified in invoking the maxim of equity for the purpose of destroying legal rights."); *Chickasaw Telephone Co. v. Drabek*, 1996 OK 76, 921 P.2d 333; *Independent School Dist. 89 v. Oklahoma City Federation of Teachers*, 1980 OK 89, 612 P.2d 719. Therefore, equity is subject to the United States and Oklahoma constitutions and may not exceed the protections and privacy therein assured to families. Mandating grandparental visitation in this case, whether by statute or equity, would violate the federal and state constitutions.

¶ 21 We affirm the decision of the trial court and vacate the opinion of the Court of Civil Appeals. Christopher Herbst's application for grandparent visitation was properly dismissed.

¶ 22 CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF CIVIL APPEALS VACATED. JUDGMENT OF THE TRIAL COURT AFFIRMED.

KAUGER, C.J., SUMMERS, V.C.J., HODGES, LAVENDER, HARGRAVE, ALMA WILSON, and WATT, JJ., concur.

OPALA, J., dissents from Part IV of court's opinion, and concurs in judgment.

OPALA, Justice, dissenting from Part IV of the court's opinion and concurring in judgment.

¶ 1 The court holds today that the provisions of 10 O.S.Supp.1996 § 5(A)(1)[1] *violate fundamental law* when they are invoked for application to an intact nuclear family in which grandparental visitation is opposed by both parents. *I am unable to join the court*

*in declaring that the critical statute, when applied to this controversy, is infirm.*[2]

**I**

## THE ANATOMY OF CONTROVERSY

¶ 2 Invoking the terms of 10 O.S.Supp. 1996 § 5(A)(1), Christopher Herbst sought a district court decree affording him access to his daughter's child. His daughter and her husband, living as an intact nuclear family, object to any contact with the petitioning grandparent. The precise reasons for their opposition are unknown, but the relationship between Herbst and his family has been severely strained. Herbst seems to have failed in cultivating important family ties. He is divorced from his wife. Both of his daughters, who are alienated from him, refuse to accede to his plea for access to their children. *Herbst is a complete stranger to the grandchild with whom he seeks visitation.*

¶ 3 The trial court "*dismissed*" Herbst's application, stating that, absent a showing of "harm to the minor," the court has no authority to interfere with the parental rights to custody and control. The trial judge viewed the terms of 10 O.S. § 5(A)(1) as preventing him from "judicially legislating" any parameters of grandparental visitation based upon some notion of equity. The Court of Civil Appeals affirmed, declaring the invoked statute to be *unconstitutional as applied to an intact nuclear family* in which grandparental visitation in contest is opposed by both parents.

**II**

## THE BAR OF PRUDENTIAL RULE

¶ 4 The court today offends the time-honored *prudential rule* of state and federal

---

1. The provisions of 10 O.S.Supp.1996 § 5(A)(1) are:

   Pursuant to the provisions of this section, any grandparent of an unmarried minor child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child. The right of visitation to any grandparent of an unmarried minor child shall be granted only so far as that right is authorized and provided by order of the district court.

   This is the version of the statute that was in force when the claim came before the court. The

present version, adopted in 1997, differs slightly from that which was invoked in this case. *See* 10 O.S.Supp.1997 § 5(A)(1).

2. While I am expressing no opinion about the *facial* infirmity of the section in contest or about its constitutional validity *in the context of other scenarios*, I am unable to conclude, as the court appears to have done, that the statute *commands* courts either to afford grandparents access to an intact nuclear family or in any other familial setting.

jurisprudence by casting on the grandparental visitation statute an unwarranted cloud of constitutional infirmity. According to the prudential rule, constitutional issues must never be reached in advance of strict necessity. It is imprudent to shape decisional law in terms broader than those dictated by the precise facts to which a legislative act is to be applied. Where the relief sought may be afforded (or withheld) upon alternative grounds, consideration of constitutional challenges should be avoided as inappropriate. This is the essence of the judiciary's self-erected "prudential bar" of restraint.[3]

## III

## THE PROVISIONS OF 10 O.S.1996 § 5(A)(1), AS THEY ARE SOUGHT TO BE APPLIED TO THE FACTS OF THIS CASE, ARE NOT CONSTITUTIONALLY INFIRM.

¶ 5 The statute in contest does not operate *in this case* as an impediment to a denial of grandparental visitation. Available to grandparents are both statutory *and* equitable claims for visitation with grandchildren.[4] A nisi prius denial of Herbst's quest for access *is* supported in this case by the weight of the evidence. The trial court's decree is not clearly contrary to the weight of adduced proof. *Herbst has no equities in his favor.* Though related to them by blood, he is a total stranger to his immediate family and to the grandchild in contest.

¶ 6 As the court declares today, the relationship between parent and child *must indeed* be treated as paramount. It warrants judicial protection. This can be accomplished *in the case* before us *without* violating the prudential bar of restraint. We sim-

ply need to apply the time-honored notions of equity jurisprudence. *A correct decree will be affirmed although the reasons given for the decision are incorrect.*[5]

## IV

## SUMMARY

¶ 7 Because Herbst's claim for access can be denied on grounds consistent with the principles of chancery jurisprudence, consideration of § 5(A)(1)'s constitutional validity is clearly unnecessary and hence inappropriate. In short, I do not share the court's view that the critical statute in question, when invoked for application to this case, offends any part of either federal or state fundamental law.

¶ 8 I hence dissent from Part IV of the court's opinion and concur in its judgment.

---

3. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *I.N.S. v. Chadha,* 462 U.S. 919, 975, 103 S.Ct. 2764, 2796, 77 L.Ed.2d 317 (1983) (White, J., dissenting); *Clay v. Independent School District No. 1 of Tulsa County,* 1997 OK 13, 935 P.2d 294, 318 (Opala, J., dissenting); *In re Initiative Petition No. 347 State Question No. 639,* 1991 OK 55, 813 P.2d 1019, 1037 (Opala, C.J., concurring); *Smith v. Westinghouse Elec. Corp.,* 1987 OK 3, 732 P.2d 466, 467 n. 3; *Schwartz v. Diehl,* 1977 OK 115, 568 P.2d 280, 283; *Dablemont v. State Dept. of Public Safety,* 1975 OK 162, 543 P.2d 563, 564.

4. *See In re Bomgardner,* 1985 OK 59, 711 P.2d 92, 97.

5. *See Price v. Walters,* 1996 OK 63, 918 P.2d 1370, 1385 n. 14; *Willis v. Nowata Land and Cattle Co.,* 1989 OK 169, 789 P.2d 1282, 1286–87; *Davidson v. Gregory,* 1989 OK 87, 780 P.2d 679, 685 n. 23; *Utica Nat'l Bank and Trust v. Associated Prod. Co.,* 1980 OK 172, 622 P.2d 1061, 1066; *Holloway v. Ward,* 84 Okl. 247, 203 P. 217, 219 (1922).