1999 OK CIV APP 116

**Connie Rae QUEEN and John Robert Queen, Appellants,**

v.

**Sherry Lee HENSON, Appellee.**

**No. 93,011.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 10, 1999.

Certiorari Denied Nov. 4, 1999.

---

Catheryn G. Hummel, Wheatley, Woods & Hummel, P.A., Tulsa, Oklahoma, for appellants.

B. Darlene Crutchfield, Crutchfield & Associates, P.C., Tulsa, Oklahoma, for appellee.

*OPINION*

BOUDREAU, V.C.J.

¶1 Grandparents Connie Rae Queen and John Robert Queen appeal the trial court's dismissal of their application for visitation. The issue on appeal is whether this matter is controlled by the supreme court's decision in *In re Herbst*, 1998 OK 100, 971 P.2d 395, such that Grandparents' application cannot proceed. We hold that it is and affirm the trial court's decision.

¶2 Grandparents are the maternal grandparents of Child, who is approximately eight years old. Mother Sherry Lee Henson is Child's biological mother; his biological father is unknown. Mother, however, has been married to Stepfather Ken Henson since June 1992. Mother, Stepfather, and Child live together as a family.

¶3 Grandparents brought this action seeking visitation rights based on 10 O.S.Supp. 1998 § 5. Mother objected to Grandparents' application and filed a motion to dismiss. The district court agreed with Mother and dismissed Grandparents' application. Grandparents appeal.

¶4 The issue presented is one of law. Contested issues of law are reviewed de novo. *Weeks v. Cessna Aircraft Co.*, 1994 OK CIV APP 171, ¶5, 895 P.2d 731, 733 (approved for publication by the Oklahoma Supreme Court). Under the de novo standard, "an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings." *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081, 1084.

¶5 Section 5 creates a mechanism for grandparents to obtain court-ordered visitation rights. Section 5(A)(1) provides:

Pursuant to the provisions of this section, each and every grandparent of an unmarried minor child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child. The right of visitation to any grandparent of an unmarried minor child shall be granted only so far as that right is authorized and provided by order of the district court.

Mother asserts that section 5 cannot be used to create a right for Grandparents to visit Child where there has been no allegation that she is an unfit parent or that there is any threat of harm to Child. In making this argument, Mother relies on *In re Herbst*, 1998 OK 100, 971 P.2d 395, in which the supreme court declared section 5 unconstitutional in certain situations. We agree with Mother that *Herbst* controls here.

¶6 In *Herbst*, the maternal grandfather filed an application for grandparental visitation. The defendant parents were married to each other in an intact nuclear family, they opposed visitation, and the grandfather made no allegations of inadequate care or danger of harm. The supreme court held that section 5 was unconstitutional under such circumstances. In making that determination, the supreme court made several observations of relevance here.

¶7 First, the court observed that the parent-child relationship is a fundamental right and is constitutionally protected. *Herbst*, 1998 OK 100, ¶10, 971 P.2d at 397. The state can intrude upon that right only when there is a compelling state interest. *Id.* To establish such a compelling interest, there must be a showing of harm to the child or unfitness of the custodial parent. *Id.* at ¶13, 971 P.2d at 398 (citing *In re Sherol A.S.*, 1978 OK 103, 581 P.2d 884). Without such a showing, "the state's interest does not rise to a level so compelling as to warrant intrusion upon the fundamental rights of parents." *Id.*

¶ 8 The court further observed that statutes like section 5 were developed to provide children with a grandparent's stabilizing influence when the family has been affected by death or the parents' domestic situation is the subject of judicial involvement. *Id.* at ¶ 15, 971 P.2d at 399. When fit parents object to a grandparent's visitation, the courts may impose visitation only upon a showing that the child will suffer harm without it. *Id.* at ¶ 16, 971 P.2d at 399.

¶ 9 Grandparents argue that "[t]he best interests of the child predominate in a suit for visitation." While this is true, there is a threshold issue the court must consider before it determines what is in the child's best interests:

> To reach the issue of a child's best interests, there must be a requisite showing of harm, or threat of harm, to bring the issue before the court or some instance of death or divorce which brings the child's domestic situation within the province of the court. Absent a showing of harm, (or threat thereof) it is not for the state to choose which associations a family must maintain and which the family is permitted to abandon.

*Id.* at ¶ 18, 971 P.2d at 399.

¶ 10 Grandparents also argue that they had an existing close relationship with Child. While the existence of such a relationship would be relevant to a best-interests-of-the-child determination, it does not address the threshold issue giving the district court the right to make such a determination. This argument was also anticipated in *Herbst*, where the court noted that, even where a grandparent-child bond was already established and the child might benefit from its maintenance, " 'the impact of a lawsuit to enforce maintenance of the bond over the parents' objection can only have a deleterious effect on the child.' " *Id.* (quoting *Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769, 773 (1995)).

¶ 11 On appeal, Grandparents argue that *Herbst* does not apply because Mother, Stepfather, and Child do not comprise an "intact nuclear family." In making this argument, Grandparents focus on the primary factual difference between this case and *Herbst*. In *Herbst*, the biological father was known and was married to the biological mother, and both biological parents opposed the grandfather's application for visitation. Here, Child's biological father is unknown, and Mother is married to Stepfather.

¶ 12 Under the circumstances here, we do not view this factual difference as critical. First, although the supreme court did refer to an "intact nuclear family" in its initial discussion in *Herbst*, it did not limit its holding to that circumstance. Instead, it focused exclusively on the lack of any allegation of harm to the child or unfitness of the parents. *See id.* at ¶ 16, 971 P.2d at 399. Second, although Child's biological father is unknown and absent, that does not affect Mother's fitness as a parent and does not, by itself, place Child in danger of harm. Further, the biological father's absence should not be used to erode a fit mother's fundamental right to determine whether *her parents* may have a relationship with her child.

¶ 13 There is simply nothing in the record to give the district court or this court the right to intrude upon the parent-child relationship here. Grandparents do not assert that Mother is unfit. *Id.* at ¶ 13, 971 P.2d at 398. They do not assert that Child has been harmed or is in any danger of harm. *See id.* at ¶ 16, 971 P.2d at 399 ("[A] vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child."). Mother's domestic situation is not the subject of judicial concern. *Id.* at ¶ 15, 971 P.2d at 399.

¶ 14 In conclusion, we view *Herbst* as controlling here. Absent any allegation of Mother's unfitness or threat of harm to Child, the district court properly dismissed Grandparents' application for visitation rights.

¶ 15 AFFIRMED.

STUBBLEFIELD, P.J., and REIF, J., concur.