2000 OK CIV APP 101

**Robin Patricia GRAHAM,**
**Plaintiff/Appellant**

v.

**Christy M. WOFFARD, now Gonzales, and Sid Gonzales, Defendants/Appellees**

No. 93,063.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 25, 2000.

Robert T. Rennie, Jr., Pauls Valley, Oklahoma, for Plaintiff/Appellant.

Daniel Sprouse, Pauls Valley, Oklahoma, for Defendants/Appellees.

BUETTNER, J.

¶ 1 In 1994, pursuant to 10 O.S.1991 § 5, the district court, using the best interests test, granted the maternal grandmother, Appellant Robin Patricia Graham (Grandmother), visitation with the minor child from one o'clock till five o'clock the first and third Sunday of each month. After the Oklahoma Supreme Court's decision in *Herbst*, the parents, Christy and Sid Gonzales (Parents), moved to terminate the order. We affirm the trial court's termination of the order.

¶ 2 *In the Matter of Herbst*, 1998 OK 100, 971 P.2d 395, the Oklahoma Supreme Court declared 10 O.S. Supp.1996 § 5(A)(1) an unconstitutional intrusion into the intact family's liberty interest. The statute had allowed the court to grant grandparental visitation with their grandchildren upon a showing of best interest.[1] The Supreme Court held that absent a showing that the children are being harmed or threatened with harm, "it is not for the state to choose which associations a family must maintain and which the family is permitted to abandon." 971 P.2d at 399.

¶ 3 We believe the Oklahoma Supreme Court, in holding § 5 unconstitutional under the facts in *Herbst*, did not intend to graft a showing of harm requirement onto § 5, but rather invalidated the statute because the Legislature had failed to recognize

1. 10 O.S. Supp.1996 § 5(A)(1): Pursuant to the provisions of this section, any grandparent of an unmarried minor child shall have reasonable rights of visitation to the child if the district court deems it to be in the best interest of the child.

The right of visitation to any grandparent of an unmarried minor child shall be granted only so far as that right is authorized and provided by order of the district court.

the constitutionally required threshold before enacting the statute. Stated otherwise, there is now no statutory basis for grandparental visitation when fit parents of an intact family object to grandparental visitation with the child.[2] In *Queen v. Henson*, 1999 OK CIV APP 116, 993 P.2d 129, the Court of Civil Appeals affirmed dismissal of maternal grandparents' petition for visitation. The biological father was unknown; mother objected to visitation. The court required allegations of unfitness of the parent or threat of harm to the child.

¶ 4 The initial order in the case at bar found simply that it was in the child's best interest that the grandmother be granted visitation. There was no finding that the parents were in any way unfit. In their motion to terminate the grandmother's visitation rights, the parents alleged facts that the visitation was deleterious to the child. After trial, the court found that the turmoil between the grandmother and the parents had escalated and that the child was now four years old, an age where she could cognitively recognize the strife. It further found that the turmoil had reached a point where it seriously negatively impacted the child. Based on these findings, the court held that there had been a substantial change of condition, a foundation for its next determination, the child's best interest. It then balanced the interests of the family and the grandmother and, relying on *Herbst*, found that the best interest of the child lay in her family integrity. The court then withdrew the 1994 order.

¶ 5 "At common law grandparents had no legal right of visitation with their grandchildren over the objection of the parents." *Brooks v. Parkerson*, 265 Ga. 189, 454 S.E.2d 769 (1995). Courts have recognized that "mandating the introduction of a third party,

even a grandparent, into a family unit is state action limiting the parents' liberty." *Herbst*, 971 P.2d at 398. The Tennessee Supreme Court, grounding its decision in a privacy interest derivative from a liberty interest, stated:

> We, too, agree that neither the legislature nor a court may properly intervene in parenting decisions absent significant harm to the child from those decisions. In so holding, we approve the logic of *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), which applied a two-step process to child neglect cases leading to foster family placement. In *Santosky*, the Supreme Court approved New York's bifurcated proceeding requiring the state first to establish parental unfitness before placing a child in foster care. This procedure assures parents that a 'best interests of the child' analysis will not pit them against potential foster parents; rather, the state cannot consider a child's 'best interests' until the natural parents have been declared unit.

*Hawk v. Hawk*, 855 S.W.2d 573, 581 (Tenn. 1993).

¶ 6 "Harm to the child" does not equate to "beneficial to the child." In many cases children benefit from relationships with their grandparents. However, unless something in the nuclear home harms or threatens to harm the child, the State may not interfere. The paradox is that if the harm is great enough for State intervention, the issue should not be grandparental visitation, but custody of the child. If grandparents presented evidence to a court that the grandchildren were in harm's way in the nuclear parental household, the court would, because the Oklahoma's Children Code is to be liberally construed[3], "notify the appropriate county office of the Department of Human

---

**2.** Decisions since *Herbst* are in conflict. In *K.R. v. B.M.H.*, 1999 OK 40, 982 P.2d 521, grandparents were granted restricted visitation in a paternity action. Grandparents appealed seeking to have the restrictions removed. The Supreme Court found no abuse of discretion and affirmed. There was no constitutional attack on § 5.

In *Sicking v. Sicking*, 2000 OK CIV APP 32, 996 P.2d 471 (cert.denied), this court held that § 5 was constitutional where, in a divorce action,

the grandparents sought and received visitation over the objection of mother but with consent of father.

In *Hartness v. Hartness*, 1999 OK CIV APP 138, 994 P.2d 1196, grandparents filed for visitation after the parents divorced. Mother objected while father consented. The Court of Civil Appeals reversed dismissal of the action.

**3.** 10 O.S. Supp.1998 § 7001–1.2.

Services that the child may be a victim of abuse or neglect."[4] Whenever a court is presented with evidence that a child is being harmed, it will act.

¶7 The Oklahoma Supreme Court held that because our grandparental visitation statute, as applied to objecting parents of an intact family, did not require a showing of harm before applying the best interest of the child test, it was an unconstitutional intrusion upon the fundamental rights of parents. Statutes allowing grandparental rights visitation are State action. The State may not intervene in the family absent a showing of significant harm or threatened harm to the child.

¶8 We hold that when an order has been entered allowing grandparental visitation, even if entered before *Herbst,* then the objecting parents of an intact, nuclear family need only show the court two factors: (1) they object to grandparental visitation; and (2) they exist as a nuclear family. Upon such showing, the court should terminate any prior order of grandparental visitation based upon 10 O.S. Supp.1996 § 5.

¶9 In this case, even though the trial court utilized incorrect tests, i.e., whether there was a permanent, substantial, material change in condition and the best interests of the child, it came to the correct conclusion.

"Whenever the law and facts so warrant, an equity decree may be affirmed if it is sustainable on any rational theory and the ultimate conclusion reached below is legally correct." *Matter of Estate of Bartlett,* 1984 OK 9, 680 P.2d 369.

AFFIRMED.

¶10 CARL B. JONES, P.J., and GARRETT, J., concur.

---

4. 10 O.S. Supp.1998 § 7002–1.2(A)(1): If the evidence in an action for a divorce, for alimony without a divorce, for an annulment, for custody of a child or for the appointment of a guardian of the person of a child, for habeas corpus in subsequent proceedings in such actions, indicates that a child is deprived, the referring court shall notify the appropriate county office of the Department of Human Services that the child may be a victim of abuse or neglect.