IN THE MATTER OF THE GRANDPARENTAL VISITATION RIGHTS TO E.R.S.
2023 OK CIV APP 37
Case Number: 120249
Decided: 09/21/2023
Mandate Issued: 10/19/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2023 OK CIV APP 37, __ P.3d __

 

IN THE MATTER OF THE GRANDPARENTAL VISITATION RIGHTS TO E.R.S., a Minor Child,

MATTHEW SMITH and VICKIE SMITH, Petitioners/Appellants,
v.
ASHLEY DURHAM and JACOB WARNER, Respondents/Appellees.

APPEAL FROM THE DISTRICT COURT OF
POTTAWATOMIE COUNTY, OKLAHOMA

HONORABLE TRACY McDANIEL, TRIAL JUDGE

AFFIRMED

Greg Wilson, Shawnee, Oklahoma, for Petitioners/Appellants

Mat Thomas, Shawnee, Oklahoma, for Respondents/Appellees

STACIE L. HIXON, JUDGE:

¶1 Matthew and Vickie Smith (Grandparents, or Grandfather and Grandmother) appeal a journal entry of judgment denying their Petition for Grandparental Visitation Rights, entered February 1, 2022, to which the custodial parent, Ashley Durham (Mother), objected.43 O.S.2021, § 109.4Mother was unfit and did not abuse its discretion by determining Grandparents had failed to meet their burden by demonstrating E.R.S. would suffer harm or potential harm without grandparental visitation. We affirm the trial court's order of February 1, 2022, denying Grandparents' Petition.

BACKGROUND

¶2 E.R.S. is the biological child of Mother and Grandparents' son, Smith.

¶3 Thereafter, on April 13, 2021, Grandparents filed their Petition for Grandparental Visitation Rights. They alleged E.R.S.'s nuclear family had been disrupted, that there was a strong, continuous grandparental relationship between Grandparents and E.R.S., that E.R.S.'s custodian (Mother) had refused to allow any relationship with E.R.S., and that visitation was in E.R.S.'s best interests. Mother and Warner opposed the Petition.

¶4 The trial court conducted a hearing on Grandparents' Petition on September 9, 2021, the same date on which it considered whether it was in E.R.S.'s best interests to be adopted by Warner. By the time of the hearing, E.R.S. was seven years old. Grandparents testified they had not seen E.R.S. since she was around three. They contended that, once Mother and Smith ceased their relationship, Mother had avoided allowing them visits with E.R.S. Grandparents acknowledged they gave up asking for visits for a few years, until they filed their Petition. Grandparents wanted to re-establish their relationship with E.R.S. through once-monthly visitation and holiday visits.

¶5 In support of their Petition, Grandparents acknowledged Mother is a loving and fit parent, but argued they met statutory requirements to seek visitation because they are able to show that Smith, at the time a non-custodial parent, is unfit. Alternatively, they argued they were entitled to visitation because, though Mother was fit, E.R.S. would suffer harm or potential harm without grandparental visitation.

¶6 The trial court determined Grandparents could not rely upon a showing that Smith was unfit to support their Petition for visitation. The trial court also determined that Grandparents had not presented evidence E.R.S. would suffer harm without grandparental visitation and denied Grandparents' Petition.

¶7 Grandparents appeal.

STANDARD OF REVIEW

¶8 Grandparents' right to court-ordered visitation is strictly statutory. Murrell v. Cox, 2009 OK 93226 P.3d 692de novo. Stump v. Cheek, 2007 OK 97179 P.3d 606Robert L. Wheeler, Inc. v. Scott, 1991 OK 95818 P.2d 475

¶9 When reviewing the trial court's determination of grandparental visitation pursuant to the applicable statute, we evaluate for an abuse of discretion. Murrell, 2009 OK 93Curry v. Streater, 2009 OK 5213 P.3d 550

ANALYSIS

¶10 Grandparents argue they met their burden by showing Smith was an unfit parent, or that E.R.S. would suffer harm or potential harm, as required to obtain grandparental visitation pursuant to 43 O.S.2021, § 109.4

¶11 Oklahoma law plainly recognizes a parent's natural right to custody and control of a child based on parental status. See In re Bomgardner, 1985 OK 59711 P.2d 92Lehr v. Robertson, 463 U.S. 248, 257-263 (1983); In re Herbst, 1998 OK 100971 P.2d 395Murrell, 2009 OK 9343 O.S.2021, § 109.4See 10 O.S. 2021, §7505-6.5(C).

¶12 Section 109.4 provides for grandparental visitation rights independent of either parent of the child if:

a. the district court deems it to be in the best interest of the child pursuant to subsection E of this section, and

b. there is a showing of parental unfitness, or the grandparent has rebutted, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation rights to the grandparent of the child, and

c. the intact nuclear family has been disrupted in that one or more of the following conditions has occurred:

***

(8) except as otherwise provided in subsection D of this section,

¶13 Thus, pursuant to the statute, Grandparents were required to show the following before the trial court could grant visitation: (1) that visitation was in the child's best interests, (2) parental unfitness or rebut the presumption that the fit parent is acting in the child's best interests by showing harm or potential harm if the relationship is not continued, and (3) disruption of the nuclear family, and existence of a strong, continuous relationship with Grandparents. Birtciel, 2016 OK 103

¶14 First, Grandparents argue that they demonstrated parental unfitness by showing Smith, their own child, was not a fit parent. Mother argued that Grandparents were required to demonstrate her unfitness. We agree with Mother. By its very nature, grandparents petitioning for visitation seek to obtain it against an objecting parent. The statute plainly contemplates this scenario and "requires grandparents to prove parental unfitness" or "rebut the presumption that the fit parent is acting in the child's best interests by showing harm or potential harm if the relationship is not continued. . . ." (emphasis added). While the statute does not expressly specify which parent must be demonstrated to be unfit, the Court will not read portions of the statute in isolation. See Anderson v. Eichner, 1994 OK 136890 P.2d 1329

¶15 The Court's decision in Craig v. Craig, 2011 OK 27253 P.3d 57Id. at ¶ 22. The Court found that a natural parent's visitation right was not transferrable or alienable, such that an Oklahoma court is required to recognize and enforce it against the custodial parent.

¶16 As is relevant here, the Court explained:

A legal "right" possessed by one person does not exist "in the air," but exists only with a corresponding legal "duty" possessed and required by another. The forensic contest herein is one pitting a custodial and biological parent against paternal grandparents as non-parent third parties. Grandparents claim a judicially cognizable "right" to visitation and thereby seek to impose a "duty" upon the custodial parent in her relationship with Grandparents. A non-custodial father with visitation rights and a custodial parent may agree to grandparent visitation during the father's exercise of his visitation, and such may be judicially enforceable. Ingram v. Knippers, 2003 OK 5872 P.3d 17Id.

***

The legal duty Grandparents seek to impose on Mother is not based upon her consent, but upon an exercise of the power of the State in altering a parent's constitutional right to the custody and control of the parent's child. When the State imposes a duty upon a custodial parent to compel the parent's conduct in matters pertaining to custody and control of that parent's child, that parent is entitled to certain protections guaranteed by our federal and state constitutions.

2011 OK 27Id. at ¶ 22 (quoting Murrell, 2009 OK 93Id. at ¶ 25.

¶17 Applied here, Grandparents acknowledge Mother is a fit parent. To suggest that Grandparents may circumvent Mother's natural and constitutional right to custody and control of her child and impose a duty upon her to facilitate visitation by demonstrating the other parent is unfit contravenes constitutional principles and the plain language and intent of the statute. Thus, Grandparents were obligated to rebut the presumption Mother acted in E.R.S.'s best interests by demonstrating by clear and convincing evidence that harm or a potential harm would result if visitation were allowed.

¶18 In their attempt to show harm, Grandparents presented testimony that, when E.R.S. was born in February 2014, Mother and Smith were still together, living in Louisiana. Grandparents lived about an hour and a half away in Texarkana. Grandparents visited E.R.S. at the hospital when she born. Grandmother testified that while Mother and Smith were together, Grandparents tried to see E.R.S. as much as they could, which she described at various points in her testimony as several times a year, a few times a year, every couple of months and on holidays, or eight times a year. Mother and Smith separated when E.R.S. was around two. Grandmother testified visits became more difficult because Smith did not get E.R.S. often.

¶19 Grandparents last saw E.R.S. in 2017. Grandmother testified Mother moved to California for about six months in early 2017 when E.R.S. was about three, and then to Oklahoma. Grandmother testified that after Mother moved, she attempted to see E.R.S., but felt that Mother was looking for reasons not to allow E.R.S. to see Grandparents. Mother cancelled a visit during the fall of 2017.

¶20 After that, Grandmother became "fed up" and stopped talking to Mother, but testified Grandfather kept up with Mother. Grandfather testified he attempted to keep the lines of communication open with Mother until 2018, but eventually gave up a few years before filing the Petition for visitation in 2021. Grandmother testified she did not ask for visits between the years 2018 and 2021 and petitioned for visitation only after Smith lost the hearing on E.R.S.'s adoption without his consent.

¶21 For her part, Mother disputed that Grandparents saw E.R.S. as often as they testified, though she acknowledged that they saw E.R.S. a reasonable amount of time before she moved to California and then Oklahoma. Mother testified that she has resided in the same place for five years. Since that time, E.R.S. received no gifts, no cards, no gestures, and Grandparents made no contact from 2019 through the filing of their Petition in 2021.

¶22 Ultimately, though Grandparents and Mother disagreed as to the frequency of visits during E.R.S.'s early life and whether Mother discouraged visitation thereafter, the evidence was undisputed that Grandparents no longer had a relationship with E.R.S., and she did not know them. Grandparents generally argued that it would be in E.R.S.'s best interests to know them and her other relatives. However, "a vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child." In re Herbst, 1998 OK 100

¶23 Grandparents also argued that Mother's testimony that E.R.S. sees a counselor for separation anxiety from an unidentified cause was evidence of potential harm. However, they presented no evidence that E.R.S.'s anxiety was related to her lack of relationship with them, which ceased when she was only three years old. Mother testified she was not sure of the source of E.R.S.'s anxiety, but believed it likely related to Mother and not to separation from Grandparents, whom she did not know and with whom she had had little contact during her early life. The trial court was entitled, as the finder of fact, to determine what reasonable inferences to take from such testimony, which apparently did not include an inference that E.R.S.'s anxiety related to her Grandparents.

¶24 The trial court's determination that Grandparents failed to show harm or potential harm is not contrary to the evidence presented. Absent such a showing, Grandparents were not entitled to court-ordered visitation under the provisions of the statute. The trial court did not abuse its discretion in denying Grandparents' Petition.

CONCLUSION

¶25 As the trial court noted at the hearing on Grandparents' Petition, the issue in this case is not whether Grandparents love E.R.S. or whether a relationship with extended family is beneficial. The issue is whether Grandparents met their burden under the statute to demonstrate they are eligible and entitled to an order compelling visitation and overriding a fit parent's constitutional right to care and control of her child. Grandparents did not meet their burden. As a matter of law, the trial court did not err in its interpretation of the statute to require that Grandparents show Mother was unfit or rebut the presumption she acted in E.R.S.'s best interest by denying visitation. The trial court's determination that Grandparents failed to demonstrate harm or potential harm to E.R.S. if visitation was not granted is supported by the evidence. Thus, the trial court did not abuse its discretion in denying visitation. The trial court's order of February 1, 2022 is affirmed.

¶26 AFFIRMED.

BARNES, V.C.J., and WISEMAN, P.J., concur.

FOOTNOTES

In the Matter of Adoption of E.R.S. (Smith I). That action affirmed the final decree of adoption of the minor child by her stepfather without Smith's consent. Though Grandparents' Petition for Visitation was heard earlier on the same day as the best interests hearing on the adoption, the order on the Grandparents' Petition for Visitation was not entered until five months after the adoption decree was filed, and well after appeal of that decree was filed. These matters were not made companion cases until after the record and briefing in Case No. 119,909 were complete and the case was assigned to this Court for disposition. The Court considered and issued its opinion in Smith I separately to avoid protracted delay and uncertainty in a matter concerning parental rights and a minor child. See, e.g., Okla. S. Ct. R. 1.27 ("When related appeals are inappropriate for consolidation they may be treated as companion appeals by the appellate court if no delay in decision would result. Companion appeals each contain separate records, are briefed separately, and are assigned to the same court for decision.").

Meanwhile, Grandparents' appeal was significantly delayed. They failed to timely serve the Petition in Error and later failed to timely file their Brief in Chief. Additionally, the record transmitted to the Oklahoma Supreme Court was missing designated materials, leading to further delay. Though the Oklahoma Supreme Court directed the record be supplemented in March 2023, it was not. Grandparents do not appear to have taken any steps to ensure supplementation of the record. See Okla S.Ct. R. 1.33(c)("The appellant has the burden of monitoring the preparation of the appellate record and seeking relief from the trial court for its timely completion."). Ultimately, this matter was not transmitted to this Court for disposition until over a year after the appeal of the adoption decree was initially assigned to this Court. This Court once again directed the record be supplemented with the hearing transcript on Grandparents' Petition for Visitation, which was not received until August 28, 2023.

Smith I did not resolve or destroy Grandparents' standing to pursue visitation because at the time the trial court considered Grandparents' Petition, E.R.S. had not yet been adopted. See generally Birtciel v. Jones, 2016 OK 103382 P.3d 1041

See In the Matter of A.N.K., 2000 OK CIV APP 9455 P.3d 1093

 between grandparent and child. The trial court appeared to assume disruption of the nuclear family at trial. Neither party addressed this issue on appeal, and we affirm the trial court's order for other reasons. Therefore, we do not address it here.