2000 OK 90

**Karen Sue NEAL, Plaintiff/Appellee,**

v.

**Kristina LEE and Keehan Odell Nesvold, Defendants/Appellants.**

**No. 93,670.**

Supreme Court of Oklahoma.

Nov. 7, 2000.

As Corrected Nov. 28, 2000.

Mark A. Zannotti, Tulsa, OK, for the Appellants.

Lynn Summers Lugibihl, William A. Caldwell, Barber & Bartz, Tulsa, OK, for the Appellee.

HODGES, J.

¶ 1 Title 10, section 5 of the Oklahoma Statutes permits a court to grant grandparent visitation if the "court deems it in the best interest of the child." [1] In November of 1997, Karen Sue Neal petitioned the district court for the right to visit Joshua, Whitney, and Hunter, her grandchildren. Kristina Nesvold, Karen Neal's daughter and the children's mother, and Keehan Nesvold, Joshua's step-father and Whitney and Hunter's father, opposed the visitation. The trial court granted Karen Neal grandparent visitation finding the visitation was in the grandchildren's best interest.

## I. FACTS

¶ 2 When Kristina Nesvold became pregnant with Joshua, she was single. Joshua was born in July of 1989. Joshua's biological father died in 1991. He and Kristina Nesvold never married. Kristina Nesvold married Keehan Nesvold. Kristina Nesvold and

---

1. Okla. Stat. tit. 10, § 5(A)(1)(i) (Supp.2000), provides:

> [T]he grandparent of an unmarried minor child may seek and be granted reasonable visitation rights to the child which visitation rights may be independent of either parent if the district court deems it to be in the best interest of the child and:
>
> . . .

> (i) at any other time and for such other reason the court deems it to be in the best interests of the child.

This amendment became effective on November 1, 2000. Previous versions of this section likewise provided for a court to award grandparent visitation when it deemed it to be in the best interest of the child. For a history of title 10, section 5 see *In re Herbst*, 1998 OK 100, ¶ 7, 971 P.2d 395, 397, and *In re Bomgardner*, 1985 OK 59, ¶¶ 4–9, 711 P.2d 92, 94–95.

Keehan Nesvold (collectively the Nesvolds) had two children Whitney, born in February of 1994, and Hunter, born in March of 1995. On November 20, 1997, Karen Sue Neal filed a petition seeking court-ordered visitation with Joshua, Whitney, and Hunter. On May 18, 1999, Keehan Nesvold filed a petition to adopt Joshua.

¶ 3 On April 27, 1998, the Nesvolds and Karen Neal agreed to an order allowing Karen Neal three supervised visits. The parties also agreed that Ms. Simpson, a child therapist, should formulate a grandparent visitation plan to be filed with the court. The plan was to become final ten days after it was filed unless one of the parties filed an objection. Ms. Simpson's grandparent visitation plan was filed on March 11, 1999. The visitation plan granted one day visitation to Karen Neal on the second Saturday of each month and fours hours on the fourth Tuesday. On March 15, 1999, the Nesvolds filed an objection to the plan and requested a stay of grandparent visitation. On May 25, 1999, the Nesvolds filed a motion to terminate grandparent visitation.

¶ 4 On June 14, 1999, over the Nesvolds' objection, the district court entered an order granting Karen Neal visitation with Joshua, Whitney, and Hunter as recommended in Ms. Simpson's report. The Nesvolds filed a petition in error asserting that the title 10, section 5 unconstitutionally infringes on their relations with their children. This Court retained the appeal for resolution.

## II. Court Ordered Grandparent Visitation

¶ 5 Grandparent visitation was recently addressed by the United Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). In *Troxel*, the biological parents of two daughters were never married. After the parents' separation, the father lived with his parents, and the daughters visited their paternal grandparents often. After the father committed suicide, the paternal grandparents petitioned the court for visitation with their granddaughters. The mother did not oppose visitation but wanted more limited visitation than the grandparents requested. The lower court granted grandparent visitation. The United States Supreme Court granted certiorari.

¶ 6 The United Supreme Court addressed the constitutionality of section 26.10.160(3) of the Revised Code of Washington which allowed "any person" at "any time" to obtain visitation rights whenever the visitation was in the child's best interest. The United Supreme Court invalidated the statute finding that it impermissibly interfered with "the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at ———, 120 S.Ct. at 2060.

¶ 7 The decision was based on several factors. First, the grandparents did not allege and the lower court did not find that the mother was unfit. *Id.* at 2061. The Court elaborated:

> [S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. *Id.*

Second, the lower court "gave no special weight at all to [the mother's] determination of her daughters' best interests." *Id.* at 2062. Third, the lower court placed the burden on the mother to show that grandparent visitation would not be in her daughters' best interest. *Id.* Fourth, the lower court did not invoke "the traditional presumption that a fit parent will act in the best interest of his or her child." *Id.* "[A] court must accord some special weight to the parent's own determination." *Id.* Fifth, the mother allowed some visitation with the grandparents. *Id.* at 2062–63. However, the Supreme Court refused to consider whether, under the United States Constitution, a "showing of harm or potential harm to the child [is] a condition precedent to granting [non-parental] visitation." *Id.* at 2063.

¶ 8 The facts in the present case are similar to the facts in *Troxel*. The mother in *Troxel* was the surviving parent of a child whose father was deceased as is Kristina Nesvold, Joshua's surviving parent. As in

*Troxel,* Karen Sue Neal has not alleged and no court has found that Kristina Nesvold is an unfit mother or that the children will suffer harm without court ordered grandparent visitation. Even though the mother in *Troxel* allowed some visitation and the Nesvolds oppose any visitation, this one factor does alter the *Troxel* decision's application to the present case. This analysis is even more compelling as applied to Whitney and Hunter who are living with both biological parents and both parents oppose grandparent visitation. We find under *Troxel,* grandparent visitation in the present case violated Kristina Nesvold's federal constitutional rights as the mother of Joshua, Whitney, and Hunter and Keehan Nesvold's constitutional rights as the father of Whitney and Hunter.

### III. Showing of Harm or potential Harm

¶ 9 In *In re Herbst,* 1998 OK 100, ¶ 18, 971 P.2d 395, 399, this Court found that, under the Oklahoma Constitution, "[i]f operating over the objection of fit parents, grandparental visitation may be imposed only upon a showing that the child would suffer harm [or potential harm] without it." *Id.* 1998 OK 100 at ¶ 16, 971 P.2d at 399. After *Troxel,* it is unclear whether a showing of harm is necessary under the United States Constitution. However, this Court's application of the Oklahoma Constitution in *Herbst* is unchanged by *Troxel.* Under *Herbst,* "[t]o reach the issue of a child's best interests, there must be a requisite showing of harm, or threat of harm. . . ." *Id.* 1998 OK 100 at ¶ 18, 971 P.2d at 399. Karen Sue Neal bore the burden of showing harm to the children. *See id.* The district court erred in reaching the issue of the children's best interest absent an allegation and finding of harm.

### IV. Intact Family

¶ 10 Karen Neal argues that the facts in *Herbst* are distinguishable because in *Herbst* the parents of the child were married and living in an "intact family". *See id.* 1998 OK 100 at ¶ 16, 971 P.2d at 399. In the present case, Kristina Nesvold Lee and Keehan Nesvold, the biological parents of Whitney and Hunter, are married and living together. Thus, *Herbst* is directly on point as

applied to the Nesvolds' parental rights concerning Whitney and Hunter. As to Joshua, he lives with his mother and step-family. Even though Keehan Nesvold has initiated proceedings to adopt Joshua, to this Court's knowledge, that process has not been completed. Until the completion of the adoption process, Keehan Nesvold is a third party in relation to Joshua and does not have a constitutionally protected interest in his relationship with Joshua. Thus as to Joshua, we address only Kristina Nesvold's constitutional rights.

¶ 11 Karen Neal would have this Court find that because Joshua's father is deceased, Kristina Nesvold's rights as Joshua's mother have been diminished making *Herbst* inapplicable here. In *Herbst,* the biological parents were married to each other, they were living together with the child, both parents opposed grandparent visitation, and parental rights were vested in both parents. The fact that in *Herbst,* the child was living in an intact nuclear family was not necessary to the holding. *Id.* 1998 OK 100 at ¶ 3, 971 P.2d at 396. Joshua's father's death does not affect Kristina Nesvold's fitness as a mother nor alter her constitutionally protected rights to rear her child without state interference. Thus, we find the holding in *Herbst* applicable to the present facts.

### V. Conclusion

¶ 12 The trial court erred in granting Karen Sue Neal grandparent visitation with Joshua, Whitney, and Hunter over the objection of their parents absent a showing of harm. Here the "vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child." *In re Herbst,* 1998 OK 100 at ¶ 16, 971 P.2d at 399. Because there are no allegations of harm, the issue of the children's best interest was irrelevant and the district court had no authority to grant Karen Sue Neal visitation. Whether the district court, on advice of a family counselor, thought court ordered visitation was "better or more desir-

able for [the children] was not relevant." *Id.* 1998 OK 100 at ¶ 16, 971 P.2d at 399.

¶ 13 As the United Supreme Court noted in the case of *Troxel,* 530 U.S. at ——, 120 S.Ct. at 2065, no doubt the parents in this case have incurred considerable expenses as a result of this litigation. The visitation ordered in this case clearly violated the Oklahoma Constitution. To force the parents into further litigation would unnecessarily further burden the Nesvolds. Therefore, we reverse the district court, grant the motion to terminate grandparent visitation, and find remand unnecessary.

REVERSED.

¶ 14 HODGES, KAUGER, WATT, BOUDREAU, WINCHESTER, JJ., concur.

¶ 15 HARGRAVE, V.C.J., concurs in part; dissents in part.

¶ 16 SUMMERS, C.J., LAVENDER, OPALA, JJ., dissent.