2004 OK CIV APP 19

**In the Matter of the GUARDIANSHIP OF H.E.W., a minor child.**

**Sandra M. Ailey and Debra Yeary, Petitioners/Appellees/Counter–Appellants,**

v.

**Jenifer Wyatt, Respondent/Appellant/Counter–Appellee.**

No. 99,102.

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 4, 2003.

Certiorari Denied Jan. 26, 2004.

James R. Rodgers, Blackwell, OK, for Appellees.

Justin Lamunyon, Lamunyon Law Firm, P.C., Enid, OK, for Appellant.

Opinion by KENNETH L. BUETTNER, Judge.

¶1 Jenifer Wyatt and Alden Ailey were the unmarried parents of H.E.W. who was born March 4, 2002. After the child's birth, Alden died while serving in the U.S. Navy. A guardianship proceeding ensued so that H.E.W., his only heir, could receive his per-

sonal belongings. Jenifer was appointed guardian of their child. Debra Yeary was Alden's mother (H.E.W.'s grandmother) and Sandra Ailey was Alden's grandmother (H.E.W.'s great-grandmother). They filed a petition in the guardianship action for visitation with H.E.W. The trial court granted visitation finding that harm occurred to H.E.W. because there had been visitation during the first seven months of H.E.W.'s life which was abruptly terminated. We reverse the order granting visitation.

¶ 2 Title 10 O.S.2001 § 5(A)(1) states:

Pursuant to the provisions of this section, the grandparent of an unmarried minor child may seek and be granted reasonable visitation rights to the child which visitation rights may be independent of either parent if the district court deems it to be in the best interest of the child and:

c. the grandchild's parent who is a child of the grandparent is deceased.

¶ 3 The law includes "great-grandparent" in the term "grandparent." 10 O.S.2001 § 5(I).[1]

¶ 4 Appellees (collectively "grandmother") did not allege any unfitness on the part of Jenifer and testified that Jenifer was a good mother who kept the baby sweet smelling and clean. Jenifer kept her word about what time she would bring the baby by and what time she would pick the baby up from the babysitting the great-grandmother was providing.

¶ 5 Testimony reveals that Jenifer and Grandmother had differences of opinion with respect to Alden's estate. Floyd Ailey was the personal representative. In the end, Mother chose a different babysitter and contact between Jenifer and Grandmother ceased. At that time, H.E.W. was about seven months old.

■ ¶ 6 Jenifer contends that the trial court erred in finding that the grandparents had shown that H.E.W. was harmed. We agree.

■ ¶ 7 Grandmother did not allege, and the evidence did not show, that Jenifer was unfit. "If operating over the objection of fit parents, grandparental visitation may be imposed only upon a showing that the child would suffer harm without it." *In re Herbst,* 1998 OK 100, ¶ 16, 971 P.2d 395, 399. The grandparent seeking visitation bears the burden of proving harm to the child and harm must be shown before the court considers the child's best interests.[2] *Neal v. Lee,* 2000 OK 90, 14 P.3d 547. Death of one of the parents does not change the surviving parent's "fitness as a mother nor alter her constitutionally protected rights to rear her child without state interference." *Id.* at ¶ 11, p. 550. Because of the fit parents' constitutionally protected rights to rear their child, and the presumption that they make decisions in the child's best interests, the alleged harm to the child must be significant. "More specifically, to succeed, the grandparents must allege and prove that the failure to grant visitation will cause the child significant harm by adversely affecting the child's health, safety, or welfare. The requirement of significant harm presupposes proof of a showing of a significant preexisting relationship between the grandparent and the child. In the absence of such a relationship, the grandparent must prove that visitation between grandparent and child is nevertheless necessary to protect the child from significant harm." *Blixt v. Blixt,* 437 Mass. 649, 658, 774 N.E.2d 1052 (2002).

1. Floyd R. Ailey was dismissed from the petition for visitation because he is H.E.W.'s step-great-grandfather. Section 5 does not extend to step-grandparents. He does not appeal this ruling.

2. 10 O.S.2001 § 5(D) provides: In determining the best interest of the minor child, the court shall consider:

1. The willingness of the grandparent or grandparents to encourage a close relationship between the child and the parent or parents;

2. The length and quality of the prior relationship between the child and the grandparent or grandparents;

3. The preference of the child if the child is determined to be of sufficient maturity to express a preference;

4. The mental and physical health of the child;

5. The mental and physical health of grandparent or grandparents; and

6. Such other factors as are necessary in the particular circumstances.

¶ 8 Grandmother's proof does not approach the level required for state interference in a fit mother's decisions. The child was seven months old when the mother started using a different babysitter. "... [A] vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant the state's interference with this parental decision regarding who may see a child." *In re Herbst, Id.* at ¶ 16, p. 399.

¶ 9 Jenifer also complains that Grandmother's witness with respect to harm was not qualified to offer an expert opinion. She argues that the "expert" lacked credentials and was nothing more than a babysitter. The witness stated that she was a non-denominational spiritual counselor with some thirty years of experience. We need not decide whether the testimony was properly admitted, however, because it was not relevant to what Grandmother needed to prove, *i.e.,* significant harm to the child.

Q: My question was related specifically to [H.E.W.] and what it would—how that would affect her to be cut off completely from her father's family?

A: I can only say what I've observed and I think it would do harm for H.E.W. I have seen it in other families. I have gone through this with other families and I've seen it in the children and their—the way they grow up, the way they handle things.

¶ 10 Grandmother counter-appeals that the trial court erred in holding that before it could address the best interest of the child, it must first find mother either unfit or harm to the child. We have addressed that issue in Jenifer's appeal and find that the trial court correctly stated the law.

¶ 11 Grandmother also argues that the trial court abused its discretion in limiting her visitation periods to every other Sunday for four hours. This allegation of error is moot in light of our holding that the trial court erred in awarding any grandparental visitation.

¶ 12 We are sympathetic to the grandmother's and great-grandmother's desires to establish a relationship with H.E.W., as the only child of Alden. However, under the facts and law, their desires can only be met through the decisions of Jenifer, as the fit mother of H.E.W.

¶ 13 For the reasons expressed, we REVERSE the order of the trial court awarding grandparental visitation and REMAND the matter with directions to enter an order consistent with this opinion.

ADAMS, P.J., and JOPLIN, C.J., concur.