BERRY v. BUGGS
2023 OK CIV APP 38
Case Number: 120758
Decided: 09/22/2023
Mandate Issued: 10/19/2023
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2023 OK CIV APP 38, __ P.3d __

 

IN THE MATTER OF: CAROLYN BERRY, Petitioner/Appellant,
and
K.A.G.B., A minor child,
v.
JA'MESHA BUGGS, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE KASEY BALDWIN, TRIAL JUDGE

AFFIRMED

Becki A. Murphy, MURPHY FRANCY, PLLC, Tulsa, Oklahoma, for Petitioner/Appellant,

Matthew Day, Isaiah Parsons, Charles Graham, PARSONS, GRAHAM, & DAY, LLC, Tulsa, Oklahoma, for Respondent/Appellee.

THOMAS E. PRINCE, PRESIDING JUDGE:

¶1 The Petitioner/Appellant, Carolyn Berry ("Grandmother"), appeals the denial of a Motion to Reconsider she filed after the trial court denied her request for grandparent visitation rights. Grandmother is the paternal grandmother of K.A.G.B. ("Child"). The Child's father, Anthony Welch ("Father"), was murdered in May, 2019. Following Father's death, Appellee, Ja'mesha Buggs ("Mother"), refused Grandmother's visitation with the child. Grandmother filed a Petition seeking grandparent visitation rights and, after a two-day trial, the request for visitation rights was denied by the trial court. Grandmother asserts on appeal that the holding of In the Matter of H.E.W., 2004 OK CIV APP 1990 P.3d 1007

BACKGROUND

¶2 The Child was born out of wedlock in June, 2016. Mother was only 15 years old when she became pregnant with the Child. Father was approximately 27-28 years old at the time of their intimate relationship. Consequently, the State charged Father with statutory rape. Father pled guilty and was incarcerated at the time of the birth of the Child.

¶3 Grandmother was present at the time of the Child's birth and saw the child a couple of times during the first few months of her life. Once Father was released from prison, he resided with Grandmother and Grandmother visited with the child at least once or twice a week. During 2017, Mother relocated with the Child to Texas and Grandmother had no contact with the Child for approximately six months. Mother and the Child returned to Oklahoma in January, 2018. Commencing in January, 2018, Father frequently cared for the Child and Grandmother also had weekly contact with the Child. During this time, Grandmother provided the Child with clothes and gifts and took care of the Child when Mother had work commitments. This routine continued until Father was murdered on May 28, 2019. Mother admitted that, prior to the murder, Grandmother had a good, strong, and healthy relationship with the Child.

¶4 After Father was murdered, Grandmother attempted to continue to have a relationship with the Child. Significant disputes, however, arose between Grandmother and the maternal grandmother.

¶5 Mother testified at trial regarding her reasons for denying Grandmother visitation. Her reasons included Grandmother's alleged refusal to abide by requests not to post photos of the Child on social media or to include the Child on a poster seeking information regarding who murdered Father. Mother testified that additional reasons to deny visitation included Grandmother's threats to take her to court during 2018 and 2019. Mother also denied visitation because Grandmother allowed the Child's photo to be on the news after Father was murdered and Grandmother held a fundraiser for the Child but kept all the money that was raised. Mother testified that another reason to deny visitation was due to a false report to the Department of Human Services which she attributed to Grandmother. Grandmother denied that she called DHS, denied that she allowed the Child's photo to be on the news, and testified that she agreed to remove the Child's photo from social media and posters. The fundraiser included funds for Father's headstone and savings for the Child. Grandmother denied that she kept any funds that were raised for her own benefit and testified that she wanted to set up a trust for the Child.

¶6 Specifically regarding the issue of harm or potential harm, Mother testified that the Child would be harmed if there was an order requiring visitation because the Child does not know Grandmother and the way Grandmother treats Mother would also harm the Child. Mother testified that she thinks "it's unhealthy because of how she treats me my Child picks up on that." Although she conceded that Grandmother did not treat her badly in the presence of the Child, she testified that the Child has seen the aftermath and how it affects her. While Grandmother was questioned regarding the issue of harm, the following exchange occurred:

Q. Okay. And has anyone on your side of the family been able to have any contact or updates for [the Child]?

A. No.

Q. Okay. And do you believe that's harmful to her?

A. Yes, absolutely.

Q. And after you were cut off from contact [Mother] herself has told you that the child has been in counseling, correct?

A. That's what she had said.

Q. Okay. And that as a matter of fact, in the text messages her counsel stipulated to, her mother indicated that the Child had regressed in potty-training. Yes?

A. Yes.

Q. And that she was having to seek grief counseling, correct?

A. Yes.

After all evidence was submitted, the trial court wanted to address the issue of harm or potential harm before moving on to the issue of best interests. Grandmother's counsel argued that evidence of harm or potential harm was included in the text messages between the grandmothers that were admitted into evidence. Counsel emphasized the regression in potty-training, Mother's unstable lifestyle, and numerous comments about how the Child misses Grandmother, loves her, and wants to see her. The Child also was put into counseling and was subjected to bullying during the same period after Father was murdered.

¶7 After considering the arguments on harm or potential harm, the trial court allowed closing argument on the issue of best interests and took the matter under advisement. On August 8, 2022, the trial court entered an Order denying Grandmother's request for visitation with the Child. On September 7, 2022, Grandmother filed Petitioner's Motion to Reconsider. Her Motion to Reconsider was denied the next day. Grandmother's Petition in Error was mailed on October 7, 2022, and filed on October 10, 2022. Grandmother brought this appeal and attached as Exhibit "A" to her Petition in Error and Amended Petition in Error the Order Denying Grandparent Visitation Request, filed on August 8, 2022, and the Order Denying Petitioner's Motion to Reconsider, filed on September 8, 2022. Mother filed a Motion to Dismiss Request for Review of August 8, 2022 Order Denying Grandparental Visitation Request. The Supreme Court, in an Order filed on November 21, 2022, granted Mother's Motion to Dismiss. Therefore, our review on appeal is limited to issues raised in Grandmother's Motion to Reconsider and the correctness of the trial court's order denying the motion.

STANDARD OF REVIEW

¶8 Grandmother's Motion to Reconsider was brought pursuant to 12 O.S. § 1031.1In the Matter of K.S., 2017 OK 16393 P.3d 715Bilyeu v. Bilyeu, 2015 OK CIV APP 58352 P.3d 56Patel v. OMH Medical Center, Inc., 1999 OK 33987 P.2d 1185

ANALYSIS

¶9 Grandmother raises two issues in her Br.-in-Chief.In the Matter of H.E.W., 2004 OK CIV APP 1990 P.3d 100743 O.S. § 109.4

The Requisite Showing of Harm or Potential Harm.

¶10 Grandmother argues that the Court in H.E.W., 2004 OK CIV APP 1943 O.S. § 109.443 O.S. § 109.4

¶11 Grandmother has satisfied the third element. The evidence was undisputed that Father is deceased and Grandmother had a preexisting relationship with the Child. The trial court did not consider the first element because it found that Grandmother's evidence did not satisfy the requisite showing of harm or potential harm. Resolution of this matter hinges upon whether the evidence at trial was sufficient to satisfy the harm element and whether the trial court committed error when it followed the holding of H.E.W., 2004 OK CIV APP 19significant harm (rather than harm or potential harm).

¶12 The requirement of a showing of harm in the context of grandparental visitation rights was first introduced by the Court in In re Herbst, 1998 OK 100971 P.2d 395Herbst, a maternal grandfather's application for grandparental visitation rights was denied on the basis that the statute that provides courts with the authority to award grandparental visitation rights was unconstitutional as applied to the facts of that case. Id., at ¶ 3. The maternal grandfather sought visitation over the objection of both parents, who were married, under 10 O.S. § 5Id., at ¶ 4. The court agreed with the parents and the grandfather appealed. The Herbst Court discussed the rights of parents to raise their children as they see fit. The Court stated that the relationship between a parent and child is a fundamental and constitutionally protected right, and that the fundamental integrity of the family unit may be subject to intrusion by the state only where a compelling state interest arises and "protecting the child from harm is the requisite State interest." Id., at ¶ 10 (citations omitted). "Without the requisite harm or unfitness, the state's interest does not rise to a level so compelling as to warrant intrusion upon the fundamental rights of parents." Id., at ¶ 13 (citation omitted). Regarding the level of harm required before the State may intrude into the decisions of fit parents, the Herbst Court noted that in many families the preservation of a relationship between grandparents and grandchildren has value and should be encouraged whenever possible. Id., at ¶ 15. Nevertheless, the Herbst Court stated:

However, a vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant interference with this personal decision regarding who may see a child.

***

If operating over the objection of fit parents, grandparental visitation may be imposed only upon a showing that the child would suffer harm without it.

Id., at ¶ 16 (emphasis added). The Herbst Court noted, further, that the issue of harm was the threshold question that must be addressed before reaching the issue of best interests. The Court held that the Oklahoma statute was unconstitutional to the extent that it allowed for grandparent visitation in the absence of a showing of harm. Id., at ¶'s 18 and 19. After Herbst, the Supreme Court of the United States decided Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054 (2000), which held that a Washington visitation statute was unconstitutional because it did not adequately protect the rights of a parent from state interference. Subsequently, in Neal v. Lee, 2000 OK 9014 P.3d 547Neal Court recognized that the Troxel Court did not determine whether a showing of harm was necessary before visitation could be awarded. Id., at ¶ 7. In Oklahoma, however, a showing of harm was still necessary under the Oklahoma Constitution before a grandparent could be awarded visitation rights. Id., at ¶ 9.

¶13 Grandmother asserts that the decision in In the Matter of H.E.W., 2004 OK CIV APP 1990 P.3d 1007H.E.W. Opinion did utilize the word "significant" as a modifying term for the term "harm". Id., at ¶'s 7 & 9. We find, however, that the holding in H.E.W. is consistent with the harm requirement that was articulated in the Herbst decision. If a "vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm", then it logically follows that the harm or potential harm to the child must be significant rather than minor. Insignificant harm is not sufficient to warrant intrusion into a fit parent's decisions regarding their child. Accordingly, we find that the trial court utilized the correct standard for harm in its decision and it was not error for the trial court to deny the Motion to Reconsider on that basis.

Evidence of Harm in the Absence of Visitation.

¶14 Grandmother also claims that the trial court committed error when it ruled that she failed to show that the Child would suffer harm in the absence of visitation. She claims that even if the standard requires significant harm, she satisfied that standard under the facts of this case. She asserts that she had a long-standing positive relationship with the Child and that she provided a stabilizing force in the Child's life. She alleges that Mother is unstable and without Grandmother's stabilizing role in the Child's life, there is a threat of harm. Grandmother finally claims that the Child was harmed as evidenced by a regression in potty training, attendance in counseling, and the Child's statements to maternal grandmother that she missed Grandmother and was asking for her.

¶15 Grandmother's burden, pursuant to statute, is to rebut, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation. 43 O.S. § 109.4firm belief or conviction as to the truth of the allegation sought to be established.'" In the Matter of E.G., 2010 OK CIV APP 34231 P.3d 785

CONCLUSION

¶16 Parents have a fundamental, constitutionally protected right to raise their children without interference from the State. The evidence in this matter does not rise to the level that would justify State interference into Mother's decisions regarding the Child. The Order Denying Petitioner's Motion to Reconsider is, therefore, AFFIRMED.

MITCHELL, C.J., and BELL, J., concur.

FOOTNOTES

21 O.S. § 1116

43 O.S. § 109.410 O.S. § 5