OSCN Found Document:BERRY v. BUGGS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 BERRY v. BUGGS
2023 OK CIV APP 38
Case Number: 120758
Decided: 09/22/2023
Mandate Issued: 10/19/2023
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III

Cite as: 2023 OK CIV APP 38, __ P.3d __

 

IN THE MATTER OF: CAROLYN BERRY, Petitioner/Appellant,
and
K.A.G.B., A minor child,
v.
JA'MESHA BUGGS, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE KASEY BALDWIN, TRIAL JUDGE

AFFIRMED

Becki A. Murphy, MURPHY FRANCY, PLLC, Tulsa, Oklahoma, for Petitioner/Appellant,

Matthew Day, Isaiah Parsons, Charles Graham, PARSONS, GRAHAM, & DAY, LLC, Tulsa, Oklahoma, for Respondent/Appellee.

THOMAS E. PRINCE, PRESIDING JUDGE:

¶1 The Petitioner/Appellant, Carolyn Berry ("Grandmother"), appeals the denial of a Motion to Reconsider she filed after the trial court denied her request for grandparent visitation rights. Grandmother is the paternal grandmother of K.A.G.B. ("Child"). The Child's father, Anthony Welch ("Father"), was murdered in May, 2019. Following Father's death, Appellee, Ja'mesha Buggs ("Mother"), refused Grandmother's visitation with the child. Grandmother filed a Petition seeking grandparent visitation rights and, after a two-day trial, the request for visitation rights was denied by the trial court. Grandmother asserts on appeal that the holding of In the Matter of H.E.W., 2004 OK CIV APP 19, 90 P.3d 1007, improperly heightened the standard for grandparent visitation and that the trial court committed error when it ruled that Grandmother failed to demonstrate that the minor child would suffer harm if visitation was not ordered. We find that the Order Denying Petitioner's Motion to Reconsider did not constitute error. Therefore, the Order is AFFIRMED.

BACKGROUND

¶2 The Child was born out of wedlock in June, 2016. Mother was only 15 years old when she became pregnant with the Child. Father was approximately 27-28 years old at the time of their intimate relationship. Consequently, the State charged Father with statutory rape. Father pled guilty and was incarcerated at the time of the birth of the Child.[1] Father was, however, later allowed to withdraw his guilty plea and, with Mother's assistance, the case was dismissed on August 23, 2016. Father was released from incarceration when the Child was approximately three months old. Father was allowed sporadic visitation at that time.

¶3 Grandmother was present at the time of the Child's birth and saw the child a couple of times during the first few months of her life. Once Father was released from prison, he resided with Grandmother and Grandmother visited with the child at least once or twice a week. During 2017, Mother relocated with the Child to Texas and Grandmother had no contact with the Child for approximately six months. Mother and the Child returned to Oklahoma in January, 2018. Commencing in January, 2018, Father frequently cared for the Child and Grandmother also had weekly contact with the Child. During this time, Grandmother provided the Child with clothes and gifts and took care of the Child when Mother had work commitments. This routine continued until Father was murdered on May 28, 2019. Mother admitted that, prior to the murder, Grandmother had a good, strong, and healthy relationship with the Child.

¶4 After Father was murdered, Grandmother attempted to continue to have a relationship with the Child. Significant disputes, however, arose between Grandmother and the maternal grandmother.[2] In addition, Grandmother and Mother were not able to communicate with each other effectively. Once it became apparent to Grandmother that she could not have contact with the Child absent court intervention, she filed her Petition for Grandparent Rights on October 10, 2019. A trial was held over a two-day period on August 2nd, and August 5th, 2022.

¶5 Mother testified at trial regarding her reasons for denying Grandmother visitation. Her reasons included Grandmother's alleged refusal to abide by requests not to post photos of the Child on social media or to include the Child on a poster seeking information regarding who murdered Father. Mother testified that additional reasons to deny visitation included Grandmother's threats to take her to court during 2018 and 2019. Mother also denied visitation because Grandmother allowed the Child's photo to be on the news after Father was murdered and Grandmother held a fundraiser for the Child but kept all the money that was raised. Mother testified that another reason to deny visitation was due to a false report to the Department of Human Services which she attributed to Grandmother. Grandmother denied that she called DHS, denied that she allowed the Child's photo to be on the news, and testified that she agreed to remove the Child's photo from social media and posters. The fundraiser included funds for Father's headstone and savings for the Child. Grandmother denied that she kept any funds that were raised for her own benefit and testified that she wanted to set up a trust for the Child.

¶6 Specifically regarding the issue of harm or potential harm, Mother testified that the Child would be harmed if there was an order requiring visitation because the Child does not know Grandmother and the way Grandmother treats Mother would also harm the Child. Mother testified that she thinks "it's unhealthy because of how she treats me my Child picks up on that." Although she conceded that Grandmother did not treat her badly in the presence of the Child, she testified that the Child has seen the aftermath and how it affects her. While Grandmother was questioned regarding the issue of harm, the following exchange occurred:

Q. Okay. And has anyone on your side of the family been able to have any contact or updates for [the Child]?

A. No.

Q. Okay. And do you believe that's harmful to her?

A. Yes, absolutely.

Q. And after you were cut off from contact [Mother] herself has told you that the child has been in counseling, correct?

A. That's what she had said.

Q. Okay. And that as a matter of fact, in the text messages her counsel stipulated to, her mother indicated that the Child had regressed in potty-training. Yes?

A. Yes.

Q. And that she was having to seek grief counseling, correct?

A. Yes.

After all evidence was submitted, the trial court wanted to address the issue of harm or potential harm before moving on to the issue of best interests. Grandmother's counsel argued that evidence of harm or potential harm was included in the text messages between the grandmothers that were admitted into evidence. Counsel emphasized the regression in potty-training, Mother's unstable lifestyle, and numerous comments about how the Child misses Grandmother, loves her, and wants to see her. The Child also was put into counseling and was subjected to bullying during the same period after Father was murdered.

¶7 After considering the arguments on harm or potential harm, the trial court allowed closing argument on the issue of best interests and took the matter under advisement. On August 8, 2022, the trial court entered an Order denying Grandmother's request for visitation with the Child. On September 7, 2022, Grandmother filed Petitioner's Motion to Reconsider. Her Motion to Reconsider was denied the next day. Grandmother's Petition in Error was mailed on October 7, 2022, and filed on October 10, 2022. Grandmother brought this appeal and attached as Exhibit "A" to her Petition in Error and Amended Petition in Error the Order Denying Grandparent Visitation Request, filed on August 8, 2022, and the Order Denying Petitioner's Motion to Reconsider, filed on September 8, 2022. Mother filed a Motion to Dismiss Request for Review of August 8, 2022 Order Denying Grandparental Visitation Request. The Supreme Court, in an Order filed on November 21, 2022, granted Mother's Motion to Dismiss. Therefore, our review on appeal is limited to issues raised in Grandmother's Motion to Reconsider and the correctness of the trial court's order denying the motion.

STANDARD OF REVIEW

¶8 Grandmother's Motion to Reconsider was brought pursuant to 12 O.S. § 1031.1. The denial of a § 1031.1 Motion is reviewed for an abuse of discretion. In the Matter of K.S., 2017 OK 16, ¶ 7, 393 P.3d 715, 717. An abuse of discretion occurs when the decision of the trial court is clearly against the weight of the evidence or contrary to law. Bilyeu v. Bilyeu, 2015 OK CIV APP 58, ¶'s 4 and 5, 352 P.3d 56, 59. The abuse of discretion standard has been described as "discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194.

ANALYSIS

¶9 Grandmother raises two issues in her Br.-in-Chief.[3] She first claims that the trial court committed error by imposing a heightened burden of proof that is not required by statute concerning grandparental visitation. She argues that In the Matter of H.E.W., 2004 OK CIV APP 19, 90 P.3d 1007, was improperly decided arguably expanding the threshold burden from "harm" to a showing of "significant harm" before visitation may be granted, based on the language of 43 O.S. § 109.4. Grandmother secondly argues that the trial court committed error when it ruled that she failed to show that the Child would suffer harm in the absence of visitation. We find that the trial court committed no error and address each issue in turn.

The Requisite Showing of Harm or Potential Harm.

¶10 Grandmother argues that the Court in H.E.W., 2004 OK CIV APP 19, improperly heightened her burden of proof and required a showing of "significant" harm, rather than harm or potential harm, before she could be awarded grandparent visitation rights. Grandparent visitation rights are governed by 43 O.S. § 109.4. Here, Grandmother may seek and obtain grandparent visitation rights if she can satisfy three elements under § 109.4. She may seek visitation rights: (1) if the trial court deems it to be in the best interests of the child, (2) if Grandmother has rebutted, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation, and (3) if the intact nuclear family is disrupted and the grandchild's parent is deceased and Grandmother had a preexisting relationship with the child that predates the death of the deceased parent. 43 O.S. § 109.4(A).

¶11 Grandmother has satisfied the third element. The evidence was undisputed that Father is deceased and Grandmother had a preexisting relationship with the Child. The trial court did not consider the first element because it found that Grandmother's evidence did not satisfy the requisite showing of harm or potential harm. Resolution of this matter hinges upon whether the evidence at trial was sufficient to satisfy the harm element and whether the trial court committed error when it followed the holding of H.E.W., 2004 OK CIV APP 19, which required a showing of significant harm (rather than harm or potential harm).

¶12 The requirement of a showing of harm in the context of grandparental visitation rights was first introduced by the Court in In re Herbst, 1998 OK 100, 971 P.2d 395. In Herbst, a maternal grandfather's application for grandparental visitation rights was denied on the basis that the statute that provides courts with the authority to award grandparental visitation rights was unconstitutional as applied to the facts of that case. Id., at ¶ 3. The maternal grandfather sought visitation over the objection of both parents, who were married, under 10 O.S. § 5.[4] The parents sought dismissal of the grandfather's application for visitation. Id., at ¶ 4. The court agreed with the parents and the grandfather appealed. The Herbst Court discussed the rights of parents to raise their children as they see fit. The Court stated that the relationship between a parent and child is a fundamental and constitutionally protected right, and that the fundamental integrity of the family unit may be subject to intrusion by the state only where a compelling state interest arises and "protecting the child from harm is the requisite State interest." Id., at ¶ 10 (citations omitted). "Without the requisite harm or unfitness, the state's interest does not rise to a level so compelling as to warrant intrusion upon the fundamental rights of parents." Id., at ¶ 13 (citation omitted). Regarding the level of harm required before the State may intrude into the decisions of fit parents, the Herbst Court noted that in many families the preservation of a relationship between grandparents and grandchildren has value and should be encouraged whenever possible. Id., at ¶ 15. Nevertheless, the Herbst Court stated:

However, a vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm which would warrant interference with this personal decision regarding who may see a child.

***

If operating over the objection of fit parents, grandparental visitation may be imposed only upon a showing that the child would suffer harm without it.

Id., at ¶ 16 (emphasis added). The Herbst Court noted, further, that the issue of harm was the threshold question that must be addressed before reaching the issue of best interests. The Court held that the Oklahoma statute was unconstitutional to the extent that it allowed for grandparent visitation in the absence of a showing of harm. Id., at ¶'s 18 and 19. After Herbst, the Supreme Court of the United States decided Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054 (2000), which held that a Washington visitation statute was unconstitutional because it did not adequately protect the rights of a parent from state interference. Subsequently, in Neal v. Lee, 2000 OK 90, 14 P.3d 547, the Neal Court recognized that the Troxel Court did not determine whether a showing of harm was necessary before visitation could be awarded. Id., at ¶ 7. In Oklahoma, however, a showing of harm was still necessary under the Oklahoma Constitution before a grandparent could be awarded visitation rights. Id., at ¶ 9.

¶13 Grandmother asserts that the decision in In the Matter of H.E.W., 2004 OK CIV APP 19, 90 P.3d 1007, improperly heightened her burden to demonstrate harm or potential harm in the absence of visitation to a showing of "significant" harm. The H.E.W. Opinion did utilize the word "significant" as a modifying term for the term "harm". Id., at ¶'s 7 & 9. We find, however, that the holding in H.E.W. is consistent with the harm requirement that was articulated in the Herbst decision. If a "vague generalization about the positive influence many grandparents have upon their grandchildren falls far short of the necessary showing of harm", then it logically follows that the harm or potential harm to the child must be significant rather than minor. Insignificant harm is not sufficient to warrant intrusion into a fit parent's decisions regarding their child. Accordingly, we find that the trial court utilized the correct standard for harm in its decision and it was not error for the trial court to deny the Motion to Reconsider on that basis.

Evidence of Harm in the Absence of Visitation.

¶14 Grandmother also claims that the trial court committed error when it ruled that she failed to show that the Child would suffer harm in the absence of visitation. She claims that even if the standard requires significant harm, she satisfied that standard under the facts of this case. She asserts that she had a long-standing positive relationship with the Child and that she provided a stabilizing force in the Child's life. She alleges that Mother is unstable and without Grandmother's stabilizing role in the Child's life, there is a threat of harm. Grandmother finally claims that the Child was harmed as evidenced by a regression in potty training, attendance in counseling, and the Child's statements to maternal grandmother that she missed Grandmother and was asking for her.

¶15 Grandmother's burden, pursuant to statute, is to rebut, by clear and convincing evidence, the presumption that the fit parent is acting in the best interests of the child by showing that the child would suffer harm or potential harm without the granting of visitation. 43 O.S. § 109.4(A). "Clear and convincing evidence is that measure of proof that 'will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegation sought to be established.'" In the Matter of E.G., 2010 OK CIV APP 34, ¶ 6, 231 P.3d 785, 787-788 (citation omitted). The evidence of harm or potential harm offered by Grandmother indicates that the Child was distressed (as evidenced by the regression in potty training and attendance at counseling sessions) after Father was murdered and that she missed and asked for Grandmother. The trial court did not consider that evidence sufficient because the Child's distress could not be causally connected to the absence of visitation with Grandmother. We agree with the trial court and find that the evidence of harm or potential harm in the absence of grandparental visitation was not clear and convincing enough to rebut Mother's decisions as a fit parent. Consequently, we find that the trial court did not commit error when it denied Grandmother's Motion to Reconsider.

CONCLUSION

¶16 Parents have a fundamental, constitutionally protected right to raise their children without interference from the State. The evidence in this matter does not rise to the level that would justify State interference into Mother's decisions regarding the Child. The Order Denying Petitioner's Motion to Reconsider is, therefore, AFFIRMED.

MITCHELL, C.J., and BELL, J., concur.

FOOTNOTES

[1] The trial court took judicial notice of the proceedings in Tulsa County Case #CF-2015-1902. According to the docket sheet there, Father pled guilty to Rape in the 2nd Degree, female under 16 in violation of 21 O.S. § 1116.

[2] At trial, an exhibit admitted into evidence that included approximately two hundred and fifty pages of text messages between the two grandmothers demonstrates that there was a significant amount of hostility between them.

[3] The issues raised in Grandmother's Br.-in-Chief were included in her Motion to Reconsider. Therefore, as a result of the Order issued by the Supreme Court, this Court will consider those issues in order to determine whether the trial court should have granted Grandmother's § 1031.1 Motion or whether the denial of that Motion constituted error.

[4] Title 43 O.S. § 109.4 is the current version of 10 O.S. § 5.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2004 OK CIV APP 19, 90 P.3d 1007, 
IN THE MATTER OF THE GUARDIANSHIP OF H.E.W.
Discussed at Length

 
2010 OK CIV APP 34, 231 P.3d 785, 
IN THE MATTER OF E.G.
Discussed

 
2015 OK CIV APP 58, 352 P.3d 56, 
BILYEU v. BILYEU
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2000 OK 90, 14 P.3d 547, 71 OBJ 2924, 
NEAL v. LEE
Discussed

 
2017 OK 16, 393 P.3d 715, 
IN THE MATTER OF K.S.
Discussed

 
1998 OK 100, 971 P.2d 395, 69 OBJ 3508, 
In the Matter of the Application of Herbst
Discussed

 
1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, 
Patel v. OMH Medical Center, Inc.
Discussed

Title 10. Children

 
Cite
Name
Level

 
10 O.S. 5, 
Renumbered as 43 O.S. § 109.4 by Laws 2009, HB 2028, c. 233, § 197, emerg. eff. May 21, 2009
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 1031.1, 
Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Cited

Title 21. Crimes and Punishments

 
Cite
Name
Level

 
21 O.S. 1116, 
Second Degree Rape - Penalty
Cited

Title 43. Marriage

 
Cite
Name
Level

 
43 O.S. 109.4, 
Visitation Rights of Grandparent of Unmarried Minor
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA